UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JACKIE DALE MCCONELL,

                    Petitioner,                    Case No. 1:17-cv-592

v.                                                 Honorable Gordon J. Quist

RANDALL HAAS,

                    Respondent.
_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jackie Dale McConell is incarcerated with the Michigan Department of Corrections at Saginaw County Correctional Facility Freeland, Michigan. Following a jury trial in the Calhoun County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317. On September 12, 2014, the court sentenced Petitioner to a prison term of sixty to ninety years.

On June 26, 2017, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on June 26, 2017. (Pet., ECF No. 1, PageID.102.)

The petition raises four grounds for relief, as follows:

I.    DUE PROCESS REQUIRES VACATING DEFENDANT'S CONVICTION AND SENTENCE WHERE THERE WAS LEGALLY INSUFFICIENT EVIDENCE TO CONVICT OF SECOND DEGREE MURDER.

II.    DEFENDANT'S INCULPATORY STATEMENTS WERE INADMISSIBLE UNDER THE CORPUS DELICTI RULE.

III.    DEFENDANT WAS DEPRIVED OF THE RIGHT TO PRESENT A DEFENSE WHEN THE TRIAL COURT REFUSED FUNDS TO HIRE AN EXPERT REGARDING THE CAUSE OF DEATH.

IV.    DUE PROCESS REQUIRES VACATING DEFENDANT[']S CONVICTION AND SENTENCE WHERE THE DEFENDANT[']S 4TH AND 14TH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION W[ERE] VIOLATED DUE TO THE WARRANTLESS AND NON-CONSENSUAL ENTRY INTO THE HOME OF THE DEFENDANT ON NUMEROUS OCCASIONS BY LAW ENFORCEMENT OFFICERS.

(Pet., ECF No. 1, PageID.93, 110.)  Respondent has filed an answer to the petition (ECF No. 8), stating that the grounds should be denied because they are noncognizable, procedurally defaulted, and without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either noncognizable or without merit.  Accordingly, I recommend that the petition be denied.

**DISCUSSION**

I.    <u>Factual allegations</u>

Petitioner's conviction arose out of the death of Donna Frost, Petitioner's then-girlfriend.  The following summary of the trial testimony is taken from the decision of the Michigan Court of Appeals:

> Defendant and the victim in this case, Donna Frost, dated for several months and lived together in a house in Albion that defendant rented.  Frost's daughter, Renee Farrier, testified that Frost had numerous medical conditions, including "ulcers in her stomach," "something wrong with her blood pressure," and anemia. Defendant admitted that Frost was small and frail.
>
> There was testimony that defendant and the victim drank heavily, leading at times to verbal and physical altercations.  At some point before her demise, Frost's family and friends gathered to conduct what they classified as an "intervention" to try and coax Frost into leaving defendant.  This proved unsuccessful despite the fact that the victim confided to her sister, Deborah McConnell[1], that defendant had physically abused her in the past.
>
> Deborah testified that she became concerned about Frost in January 2014 "[b]ecause [she] was told that Jackie [defendant] was—hasn't been seen and that the people that were living with him said that Donna wasn't there for over a week."  Deborah told her husband about her concerns and he contacted the Albion police.
>
> Albion Department of Public Safety Officer Richard Decker testified that he did a "welfare check" on defendant's house on January 20, 2014, after Frost's family members "had not heard from her for several days . . . [and] requested that [he] accompany them to the house to see if she was there, and if so, to check on her condition."  They found no one there but a dog.  Albion Department of Public Safety Detective Luis Tejada testified that after talking with members of Frost's family, he "determined that there was too many red flags going on," explaining that he "realized that [Frost] did not have the physical means to just get up and walk away from that residence."  This led to a second "welfare check" on the home where again, police

were unable to find defendant and no evidence was gleaned from their entry.

Eventually, police surmised that defendant had been in North Carolina visiting his nephew, Brandon Russell. Tejada and the other officers "decided to—at least three or four of [them] needed to go down there and interview Brandon Russell and his live-in partner Mr. Henry to find out what happened to Jackie." When they arrived in North Carolina, Tejada called defendant and defendant agreed to come to a local police station to meet with them. Tejada testified that he advised defendant of his Miranda[2] rights and that defendant signed a waiver form and agreed to talk with him. The interview, which took place on January 26, 2014, was videotaped, and a portion of the video was played at trial. In the video, defendant initially denied knowing Frost's whereabouts, but upon further questioning said: "Let's cut the bullshit." Defendant then told Tejada that Frost was "[a]t Blake's Tree Farm in a hole."[3] Defendant explained that he and Frost were both naked because they had just finished having sex and they then got into "a bad fight" and he "hit her too hard" with his fist. Defendant said that after he hit her, he dressed her, put her in bed, and lay with her for a couple hours. He said that he then put her in the trunk of his car and drove to his sister's house, and when she was not home defendant admitted that he then dumped Donna Frost in the pit.

Tejada also testified about defendant's statements that were not on the video played to the jury. He testified that defendant said that he had "hit [Frost] really hard on the face/head area with his hands . . . ." Tejada also testified that defendant "said that there was a little bit of blood . . . [and] some injuries here on this side of the face." Tejada testified that defendant said that after he hit Frost, she was not breathing and did not have a pulse, but chose not to call 9-1-1 because defendant thought Frost to be dead. However, Tejada added that defendant "mentioned during the interview that he was hoping that [Frost] was knocked out, that she—it was just all a nightmare, but he realized that she was dead, she was gone." Tejada testified that according to his conversation with defendant, the time of Frost's death was January 14, 2014[,] between midnight and 2:00 a.m. or 3:00 a.m.

Based on the information provided to police, Frost's body was discovered and an autopsy was performed. Dr. Brandi Shattuck, a forensic pathologist, who was qualified at trial as an expert in that field testified that she performed the autopsy on Frost.

4

Shattuck testified that there was "a laceration on the right forehead," a "contusion, which is a bruise, adjacent to that area," and "ecchymosis, which is discoloration or a bruise around the eyes." She also testified that there were abrasions on Frost's torso and back. Regarding the lacerations on Frost, Shattuck testified that "[t]here was no pattern" and that she "couldn't tell you if it was anything other than something blunt." She also testified that there were no defensive wounds on Frost's hands.

Shattuck testified that her internal examination revealed "two areas of healing fracture and one area of perimortem fracture" on the left and right ribs, explaining that a "perimortem" fracture "happens on or around the—the time of death." She testified that there were also "multiple areas of hemorrhage in the soft tissue of the scalp."

Shattuck determined that the cause of death was "blunt injury to the head" and classified it as a homicide. As the "cause of death" on the death certificate, Shattuck stated, "Blunt force injuries of head with or without associated hypothermia"[4]. Shattuck concluded that she arrived at the cause of death because of the injuries, defendant's confession, and the fact that she had "no other competing mechanism for that trauma."

[1] Testimony revealed that the victim's sister was married to defendant's brother.

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] Tejada described the hole as follows: "It's more of a pit, 30 feet wide, 20 feet long, and about 10 feet deep that they use to burn tree trunks, boards, debris, mattresses, anything that they throw in there, they burn it up. It's just a burning pit."

[4] Tejada testified that the weather during that time had been "in the single digits, really cold," and there was "at least a foot of snow on the ground and continual falling snow."

(Mich. Ct. App. Op., ECF No. 13, PageID.1063-1065.)

The trial court instructed the jury on the charged offense of second-degree murder. The court also instructed the jury on the lesser-included offense of voluntary

manslaughter.  (T. Tr. III,[1] ECF No. 9-10, PageID.1037-1038.)  On August 8, 2014, the jury found Petitioner guilty of second-degree murder.  (T. Tr. IV, ECF No. 9-11, PageID.1050-1052.)

Petitioner appealed his conviction to the Michigan Court of Appeals.  In the brief filed by counsel, Petitioner raised the first three issues presented in his habeas petition.  (Def.-Appellant's Br. on Appeal, ECF No. 9-13, PageID.1081.)  Petitioner also filed a pro per supplemental brief on appeal, in which he raised his fourth habeas ground.  (Def.-Appellant's Supp. Br. on Appeal, ECF No. 9-13, PageID.1109-1022.)  In an unpublished opinion issued on January 28, 2016, the court of appeals rejected all appellate grounds and affirmed the conviction.

Petitioner sought leave to appeal to the Michigan Supreme Court, again raising the four grounds presented in his habeas petition.  On July 26, 2016, the supreme court denied leave to appeal, because it was not persuaded that the questions presented should be reviewed by the court.  (Mich. Ord., ECF No. 9-14, PageID.1182.)  Petitioner did not seek a writ of certiorari from the United States Supreme Court.

Petitioner timely filed his habeas petition on or about June 26, 2017.

---

[1] Petitioner's trial took place over the course of four days.  The transcripts hereafter will be numbered as follows:

Trial transcript for Aug. 5, 2014:        (T. Tr. I(a), ECF No. 9-7, PageID.__.)
Voir dire transcript for Aug. 5, 2014:    (T. Tr. I(b), ECF No. 9-8, PageID.__.)
Trial transcript for Aug. 6, 2014:        (T. Tr. II, ECF No. 9-9, PageID.__.)
Trial transcript for Aug. 7, 2014:        (T. Tr. III, ECF No. 9-10, PageID.__.)
Trial transcript for Aug. 8, 2014:        (T. Tr. IV, ECF No. 9-11, PageID.__.)

II.    <u>AEDPA standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.

*Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.   <u>Ground I:  Sufficiency of the Evidence</u>

Petitioner asserts that the prosecution presented insufficient evidence of malice to support the finding of second-degree murder.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at

319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).   This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The court of appeals thoroughly addressed Petitioner's sufficiency claim and found the evidence sufficient to establish the element of malice beyond a reasonable doubt.  (*See* Mich. Ct. App. Op., ECF No. 9-13, PageID.1065-1067.)  While the court of appeals relied solely on Michigan case law in reaching its decision, the standard it applied was wholly consistent with the *Jackson* standard.  Thus, the state court relied on the correct standard of review.  Moreover, this Court is bound by the state court's determination of the elements of second-degree murder.  *See Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

Further, the facts found by the court of appeals, both in its outline of the background of the case and in its application of the *Jackson* standard are entitled to a presumption of correctness that Petitioner must overcome by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Lancaster*, 324 F.3d

10

at 429.  Petitioner fails to meet this burden.  Indeed, Petitioner does not seriously dispute any fact set forth by the court of appeals.  Instead, he argues the many aspects of the testimony that, he believes, should have led the jury to reach a different decision.  He suggests that the jury should have believed his testimony at trial – that he only "smack[ed] her in the mouth" and that it "was no different than any other time it's happened" (T. Tr. III, ECF No. 9-10, PageID.962), rather than, as he told Detective Tejada during his recorded police statement, they "had a bad physical fight" and that he "hit her too hard" with "[his] fist."  (T. Tr. II, ECF No. 9-9, PageID.734.)

Petitioner makes this suggestion, despite the fact that he repeatedly lied to the police during the first half of his interview and despite the numerous other contradictions between his recorded statement and his trial testimony.  For example, he stated in his police interview that the incident happened just as they were leaving the bathroom and that she fell in the hallway.  (T. Tr. II, ECF No. 9-9, PageID.735.)  At trial, however, he testified that the incident happened in the bathroom, and the victim stumbled back onto the toilet.  (T. Tr. III, ECF No. 9-10, PageID.962.)

Petitioner also added new details at trial, such as the claim that the victim had hit him in the head with a vase before he smacked her, and that he stumbled over the puppy as he was trying to clean her up, causing them both to tumble into the bathtub.  (*Id.*, PageID.963.)   Further, Petitioner acknowledged that he hit the victim on multiple prior occasions, that she weighed only about 80 pounds and was very fragile, and that he knew that she bruised and was injured easily because of her underlying anemia.  He also admitted that she died just after he hit her.  And the evidence

11

showed that the victim had new bruises on her face, blunt force trauma to her head, two healing broken ribs, and a perimortem fracture of another rib that had occurred near the time of death.  Yet Petitioner somehow maintains that the jury should have believed, without a shred of supporting evidence, that the blow or blows that immediately preceded her death did not kill her.

Petitioner also suggests that the jury should have believed that his behavior after the victim collapsed – his failure to call 9-1-1, his placing the victim in the car for several hours while he drove to his sister's house and drove around, and his depositing of the victim's body in an out-of-the-way burn pit, covered by carpet and other materials – were all the product of his panic, not evidence of his guilty mind. Petitioner also suggests that the jury should have found reasonable doubt on the issue of malice, because he had actually loved the victim and had no conscious intent to kill her.  He stresses that the victim's children hated him and believed that he had repeatedly hurt the victim, bruising her and breaking her ankle.  Petitioner also argues that the jury should have believed that the victim simply fell over and died from her many underlying illnesses.

Petitioner's arguments were presented to the jury and the jury rejected them, finding that, at a minimum, Petitioner had acted with wanton and willful disregard of the likelihood that, by beating the victim hard, he would cause great bodily harm or death.  Petitioner asks this Court to overcome the double deference owed to the jury verdict and the state court's denial of his sufficiency claim, simply because the jury could have reached another inference from the facts.  Petitioner's suggestion,

however, would turn the *Jackson* standard on its head, asking the Court to review the facts in the light most favorable to the petitioner, rather than in the light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319.

In this case, the Michigan Court of Appeals reasonably determined that the facts, taken in the light most favorable to the prosecution, amply supported the jury's finding of malice.  The court of appeals' determination was patently reasonable on the facts presented.

IV.    <u>Ground II:  Corpus Delicti Rule</u>

Petitioner argues that his inculpatory statements were inadmissible under the corpus delicti rule.  Specifically, he contends that the prosecution did not produce sufficient direct or circumstantial evidence that Donna Frost died by criminal agency. Because the prosecution failed to show that a crime had been committed, he argues, his statement should not have been admitted to convict him of a crime that did not occur.

The court of appeals found that Petitioner had waived his claim, despite having brought a pretrial motion on the issue, because counsel indicated at trial that he had no objection to the admission of the statement.  Despite the waiver, the court of appeals addressed and rejected the claim on the merits:

> Our review of the record leads us to conclude that at trial, the State produced sufficient proof of the *corpus delicti* beyond defendant's confession.  Defendant admitted that he regularly abused Frost.  See *People v Schumacher*, 276 Mich App 165, 181; 740 NW2d 534 (2007) (explaining that a defendant's admissions apart from a confession of guilt can be used to establish the *corpus delicti*).  Additionally, Frost's body was discovered at the bottom of a pit under a carpet.  And despite Shattuck's reliance on defendant's confession, she nonetheless testified

to extensive physical trauma sustained by Frost, including a facial laceration, "bruising around the eyes," a perimortem fracture on one rib, abrasions on the torso and back, and "multiple areas of hemorrhage in the soft tissue of the scalp." The totality of the evidence in this case, including the reasonable inferences as previously stated can be drawn from that evidence, was sufficient to establish that Frost's death was caused by some criminal agency. *People v McMahan*, 451 Mich 543, 549; 548 NW2d 199 (1996).

(Mich. Ct. App. Op., ECF No. 9-13, PageID.1067.)

Petitioner's second habeas ground raises a claim solely under state law. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, this court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if

14

Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard.  Although the Supreme Court has recognized the general principle that an accused may not be convicted on his own uncorroborated confession, *see Smith v. United* States, 348 U.S. 147, 152-53 (1954), it did so only as a matter of federal common law.  The Court has never held that the corpus delicti rule is constitutionally mandated. *See Evans v. Luebbers*, 331 F.3d 438, 442-43 & n.3 (8th Cir. 2004); *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998); *Williams v. Lecureaux*, No. 92-2476, 1993 WL 445090, at *1 (6th Cir. Nov. 2, 1993). Instead, the rule is strictly one of state law. *Williams*, 1993 WL 445090, at *1; *Templeton v. Foltz*, No. 85-1223, 1986 WL 18450, at *1 (6th Cir. Dec. 29, 1986). Accordingly, the court of appeals' finding under its own law is binding on this Court and cannot form the basis for granting habeas relief. *See Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76).

## V.    Ground III:  Right to Present a Defense

In his third habeas ground, Petitioner argues that the trial court deprived him of his constitutional right to present a defense when it refused to authorize funds for a second opinion on the cause of death.  In a motion filed just before trial, the defense requested the appointment of another pathologist to consider all of the victim's

medical records, because the pathologist initially was not able to say what caused the death, but subsequently concluded that the death was the result of a homicide.  The trial court heard the motion one day before trial and denied it, concluding that the issues the defense wished to raise could be effectively accomplished by way of cross-examination.  (Tr. of Hr'g on Mot. for Funds to Appoint Expert, ECF No. 9-6, PageID.339-350.)

The Michigan Court of Appeals rejected Petitioner's claim:

> MCL 775.15 permits trial courts to appoint expert witnesses for criminal defendants under certain circumstances.  *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006).  For a defendant to be appointed an expert under MCL 775.15, he "must demonstrate a nexus between the facts of the case and the need for an expert."  *Id.* at 617.  Before trial, defendant moved "for funds for a second opinion of pathology and cause of death."  Defendant criticized the conclusions of Shattuck's autopsy report and requested funds to have another pathologist examine the case.  Defendant alleged in his motion that he was "communicating with" another doctor "to provide a second opinion." However, he provided no indication that any expert would likely benefit his defense.

> In this case the trial court correctly focused on the need for defendant to demonstrate there was a nexus between the facts and the need for an expert.  When defense counsel was unable to offer to the trial court a nexus between the facts and the need for an expert, the trial court properly concluded that an expert was not warranted. In the absence of an indication that expert testimony would likely benefit the defense, it was not error to deny the motion for appointment of an expert witness.  *People v Jacobson*, 448 Mich 639, 641-642; 532 NW2d 838 (1995).  Accordingly, we cannot find that the trial court abused its discretion and defendant is not entitled to relief on this issue.

(Mich. Ct. App. Op., ECF No. 9-13, PageID.1067-1068.)

The Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity to present a complete defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984), *quoted in Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).

16

The right is derived from the Sixth Amendment rights to compel and confront witnesses and from the Due Process Clause of the Fourteenth Amendment. *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process law.").

The Supreme Court has repeatedly recognized, however, that the right to present a defense is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers*, 410 U.S. at 295; *see also Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998).

> "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve.  Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).

The Supreme Court has recognized only limited circumstances in which due process requires the appointment of an expert.  In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that, where a defendant's sanity is a consequential issue at trial, there exists a limited right to psychiatric or psychological expert

17

assistance.  The Court held that "mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and . . . a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense."  *Id.* at 77.  The Court considered three factors in determining whether the deprivation of the psychiatric expert implicates fundamental fairness: (1) "the private interest in the accuracy of a criminal proceeding," which the Court found to be "uniquely compelling," *id.* at 78; (2) the state's interest that would be affected by providing expert assistance, which the Court found to be "not substantial," *id.* at 79; and (3) "the probable value of the psychiatric assistance sought and the risk of error in the proceeding is such assistance is not offered."  *Id.*  In order to be entitled to an expert on sanity, the defendant must first make "a preliminary showing that his sanity at the time of the offense is to be a significant factor at trial . . . ."  *Id.* at 83.

The Supreme Court has not extended the rule of *Ake* to other types of experts. *See Davis v. Maclaren*, No. 17-2153, 2018 WL 4710071, at *3 (6th Cir. Apr. 3, 2018) (holding that "there is no clearly established right to the appointment of non-psychiatric expert witnesses or court appointed investigators") (citing *Babick v. Berghuis*, 620 F.3d 571, 579 (6th Cir. 2010) (seeking an arson expert and investigator)); *McGowan v. Winn*, No. 17-2000, 2018 WL 1414902, at *2 (6th Cir. Mar. 21, 2018) (concluding that the Supreme Court has not expanded the rule of *Ake* to experts in pharmacology or toxicology) (citing *Morva v. Zook*, 821 F.3d 517, 525 (4th

18

Cir. 2016)); *Harris v. Stovall*, 212 F.3d 940, 944-45 (6th Cir. 2000) (concluding that the Supreme Court has not defined the limits of what constitutes the "basic tools of an adequate defense or appeal") (citing *Ake*, 470 U.S. at 77); *see also Weeks v. Angelone*, 176 F.3d 249, 265 (4th Cir. 1999). Indeed, in *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985), the Court expressly declined to reach the issue whether the analysis set forth in *Ake* applies to the appointment of a criminal investigator, a fingerprint expert, and a ballistics expert. Because no clearly established Supreme Court precedent establishes Petitioner's right to the appointment of a pathologist for the defense, the court of appeals' rejection of his claim is neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court. *McGowan*, 2018 WL 1414902, at 2.

Moreover, even if *Ake* extends to non-psychiatric experts, Petitioner failed to meet the requirement of showing that the expert was "reasonably necessary" to his defense. *Caldwell*, 472 U.S. at 323 n.1. Defense counsel suggested that the victim had cirrhosis of the liver, a contention expressly denied by the state's pathologist and unobservable in the photograph of the liver. Counsel offered no factual basis for his claim of cirrhosis, nor did he provide evidence of any other underlying medical condition that could have caused the victim to spontaneously die, as opposed having been killed by being struck or beaten. "[U]ndeveloped assertions that the requested assistance would be beneficial . . ." do not establish that such assistance is reasonably necessary, and the denial of vague requests for expert assistance does not implicate constitutional concerns. *Id.*

19

For these reasons, Petitioner fails to demonstrate that the state court's denial of his claim was either contrary to or an unreasonable application of federal law as established by the Supreme Court.  Accordingly, he is not entitled to relief on his third habeas ground.

VI.    Ground IV:  Warrantless Search

In his final ground for habeas relief, Petitioner contends that his conviction should be overturned on the ground that police officers on two occasions entered his home without a warrant.

Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars habeas review of Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court

20

determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error."  *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down.  Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

Moreover, even if his claim were not barred by *Stone v. Powell*, Petitioner cannot demonstrate any harm arising from the searches of his home that would entitle him to habeas relief.  As discussed, the remedy for a search that violates the Fourth Amendment is the suppression of evidence obtained by the search.  *See Mapp*, 367 U.S. 643.  But, as the Michigan Court of Appeals recognized, no evidence from the ostensibly illegal searches was offered at trial.  Where no illegally obtained evidence was introduced, the legality of the search had no impact on the trial. For both reasons, Petitioner is not entitled to relief on his fourth habeas ground.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529

U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Accordingly, I recommend that the Court deny Petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Date: April 23, 2019                           /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen (14) days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).

23